IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROBERT J. SORENSEN,<br><br>Petitioner,<br><br><br><br><br><br><br><br>vs.<br><br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | MEMORANDUM DECISION AND ORDER GRANTING PETITIONER'S MOTION TO STRIKE, GRANTING PETITIONER'S MOTION TO EXPEDITE JUDGMENT, DENYING PETITIONER'S MOTION TO VACATE OR CORRECT SENTENCE, AND DISMISSING CASE<br><br><br><br><br><br>Civil Case No. 2:04-CV-95 TS<br>Criminal Case No. 2:99-CR-441 TS |

Petitioner Robert J. Sorensen brings a Motion to Vacate or Correct Sentence, pursuant to

28 U.S.C. § 2255, as well as a Motion to Strike the Government's Reply Brief, and a Motion to

Expedite Judgment.  Petitioner is proceeding *pro se* in this matter.  While the Court grants

Petitioner's Motion to Strike and Motion to Expedite Judgment, the Court finds that all of

Petitioner's arguments on the underlying Motion, and the underlying bases, do not establish

appropriate grounds upon which to justify relief under § 2255, and denies the Motion and dismisses this case.

On December 2, 1999, Petitioner was charged in a three-count Superseding Indictment. The Superseding Indictment specifically charged Petitioner with possession of a listed chemical with intent to distribute, possession of a listed chemical with intent to manufacture methamphetamine (iodine crystals), and possession of methamphetamine with intent to distribute.[1]  Petitioner pleaded guilty to two counts of possession of a list chemical, as alleged in Counts I and II, on August 13, 2002.  A presentence report was prepared, and Defendant was sentenced on February 3, 2003, to a sentence of 108 months incarceration.  As agreed upon by the parties in the plea agreement, Count III was dismissed at sentencing upon motion of the government.  Judgment was entered on February 4, 2003.  Petitioner did not pursue a direct appeal.

Petitioner brought his Motion to Vacate on January 9, 2004 – within the one-year statute of limitations.  After briefing of Petitioner's Motion had occurred, Petitioner brought a Motion to Amend his Motion to Vacate on February 2, 2005.  The Court granted Petitioner's Motion to Amend on March 11, 2005.  In the Court's order, the Court set forth a briefing schedule, which allowed Petitioner until April 29, 2005, to submit his amended motion and allowed the government until June 3, 2005, to file a reply.  The government failed to respond by the appointed date and filed a tardy reply on June 22, 2005.

---

[1] Case No. 2:99-CR-441 TS.

<u>DISCUSSION</u>

I.      <u>MOTION TO STRIKE</u>

As noted, the government failed to respond to Petitioner's Motion to Vacate in a timely

manner.  Consequently, Petitioner has filed a Motion to Strike[2] the government's tardy response.

After a somewhat tortured procedural history, including the Court's issuance of briefing

schedules and granting of extensions, the government still filed a late brief.  The government

now proffers the excuse that its failing to reply should be excused due to employment changes in

the U.S. Attorney's Office.  Due to the chronic failure of the government to respond in a timely

fashion in this case and others before the Court, the Court grants Petitioner's request and strikes

the government's memorandum.

II.     <u>MOTION TO EXPEDITE JUDGMENT</u>

Petitioner also makes a Motion to Expedite Judgment.[3]  The Court will grant the Motion,

insomuch as it seeks to expedite the disposition of this case, but will deny the Motion insofar as

it seeks judgment in favor of Petitioner.

II.     <u>MOTION TO VACATE OR CORRECT</u>

While Petitioner sought and received leave to amend his Memorandum supporting his

Motion to Vacate or Correct, it appears from Petitioner's Amended Memorandum that Petitioner

believes that the Amended Memorandum supplements rather than supplants his initial

Memorandum.  In light of the fact that Petitioner represents himself *pro se*, the Court, therefore,

will address issues raised in both his original and amended memoranda collectively.

---

[2] Docket No. 18 in Case No. 2:04-CV-95 TS.
[3] Docket No. 16 in Case No. 2:04-CV-95 TS.

3

A.     _Booker_ arguments

The only issue Petitioner raises in his amended Petition is that his sentence should be vacated or corrected because his sentencing violated _Booker_.[4]  The thrust of Petitioner's argument is that in sentencing Petitioner, the Court relied on facts not included in Petitioner's plea and not found by a jury.

Given the case law surrounding _Booker_, this question is not a difficult one for the Court. Simply put, _Booker_ does not apply to cases on collateral appeal.[5]  The Tenth Circuit has explained that "[a] new rule is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive."[6]  The Supreme Court in _Booker_ explicitly held that it applied "to all cases on direct review."[7]

The Tenth Circuit has specifically considered this issue and ruled squarely: "we hold that _Blakely_ does not apply retroactively to convictions that were already final at the time the Court decided _Blakely_, June 24, 2004."[8]  Because Petitioner's conviction was clearly final by June 24, 2004, _Booker_ does not apply retroactively to this case.

B.     Ineffective Assistance of Counsel

Aside from the _Booker_ arguments raised above, Petitioner raises a number of other issues, most of which are raised in the context of ineffective assistance of counsel.  Because ineffective

---

[4] _United States v. Booker_, 125 S.Ct. 738 (2005).

[5] However, even if the Court found that _Booker_ applied to this collateral appeal, the Court would find that _Booker_ is inapposite here and would not afford Petitioner the relief sought, as there was no Sixth Amendment violation in this case, and the sentence imposed was reasonable.

[6] _Leonard v. United States_, 383 F.3d 1146, 1148 (10th Cir. 2004).

[7] 125 S.Ct. at 769 (citing _Griffith v. Kentucky_, 479 U.S. 314, 328 (1987)).

[8] _United States v. Price_, 400 F.3d 844, 849 (10th Cir. 2005);  _See also United States v. Lucero_, 123 Fed. Appx. 918, 2005 WL 388731 (10th Cir. Feb. 18, 2005) (unpublished opinion) ("We hold that the rule announced in _Booker_ is not retroactive.").

4

assistance of counsel is the appropriate vehicle for review of these issues by this Court in the

context of a § 2255 proceeding, the Court will analyze each of Plaintiff's claims from that

standpoint.

Construing Petitioner's *pro se* Motion liberally, the Court considers the following

allegations of ineffective assistance of counsel.  That trial counsel failed to object to: 1) the

enhancement for obstruction of justice; 2) the drug quantity calculation in the presentence report

upon which Petitioner was sentenced; and 3) Petitioner not receiving the benefit of the "safety

valve" at sentencing.  The Court will address each argument, in turn.

        1.    Standard

The Supreme Court has set forth a two-pronged test to guide the Court in making a

determination of ineffectiveness of counsel.[9]

> To demonstrate ineffectiveness of counsel, [Petitioner] must
> generally show that counsel's performance fell below an objective
> standard of reasonableness, and that counsel's deficient
> performance was prejudicial.[10]

To successfully claim ineffective assistance, then, Petitioner must show two things:  First, that

his counsel functioned deficiently.[11]  "This requires showing that counsel made errors so serious

that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."[12]

Second, he must show that counsel's deficient functioning prejudiced Petitioner's defense.[13]

"This requires showing that counsel's errors were so serious as to deprive [Petitioner] of a fair

---

[9] *Strickland v. Washington*, 466 U.S. 668 (1984).
[10] *United States v. Lopez*, 100 F.3d 113, 117 (10th Cir. 1996) (citing *Strickland*).
[11] *Strickland*, 466 U.S. at 687.
[12] *Id.*
[13] *Id.*

5

[proceeding], . . . whose result is reliable."[14]  Without both of these showings, Petitioner may not prevail in arguing that his conviction "resulted from a breakdown in the adversary process that renders the result unreliable."[15]

A court is to review Petitioner's ineffective assistance of counsel claim from the perspective of his counsel at the time he rendered his legal services, not in hindsight.[16]  In addition, in evaluating counsel's performance, the focus is not what is prudent or appropriate, but only what is constitutionally compelled.[17]

2.      Sentencing Guidelines Calculations

The thrust of Petitioner's non-*Booker*, ineffective assistance claims is that the Court was in error in calculating the sentencing guideline range in the underlying criminal case, and that he was prejudiced thereby.  As a matter of law, Petitioner's claims regarding the guideline calculations fail.

a.      Obstruction of Justice Enhancement

Petitioner was given a two-level enhancement in paragraph 26 of the presentence report because he "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to the defendant's offense of conviction and any relevant conduct."[18]  Petitioner's argument is that his trial counsel should

---

[14] *Id.*

[15] *Id.*

[16] *Hickman v. Spears*, 160 F.3d 1269, 1273 (10th Cir. 1998).

[17] *United States v. Cronic, 466 U.S. 648, 665 n.38.*

[18] *See* USSG § 3C1.1(A) and (B).

have objected to the enhancement because the Court "failed to make [a] factual finding pursuant to a Dunnigan Hearing," and because the government had agreed not to seek an enhancement.

Regarding Petitioner's argument regarding *United States v. Dunnigan*,[19] that decision dealt with a court's duty to make factual findings to justify an obstruction of justice enhancement when it is based upon perjury.  The Court finds that *Dunnigan* is inapposite to the instant case, because the obstruction of justice enhancement here was attributed to Petitioner because he violated conditions of his release by failing to appear on February 20, 2001, and March 26, 2001 – not for perjury.  The underlying criminal docket reflects Petitioner's failure to appear and his subsequent failure to appear after Magistrate Judge Boyce issued a bench warrant.  Petitioner was a fugitive until July 13, 2001, when he was taken into custody by the U.S. Marshal.

Regarding the government's agreement not to seek an enhancement for obstruction of justice, it is true that in the plea agreement executed by the parties, the government agreed that it would not seek such an enhancement,[20] and the docket reflects that the government did not do so.  The Court notes that it is not bound by the government's agreement not to seek an enhancement.  A plea agreement is made between the parties, and the Court has an independent duty to impose a just sentence upon a defendant.  As such, the enhancement was applied based upon the failure to appear conduct just described.

The Court finds that the two-level enhancement applied at paragraph 26 of the presentence report was accurate, reasonable, and fully supported by the facts of the case.

---

[19] 507 U.S. 87 (1993).
[20] Statement by Defendant in Advance of Plea of Guilty, Docket No. 15 in Case No. 2:99-CR-95 TS, at 5.

Therefore, Petitioner's trial counsel did not provide ineffective assistance by failing to object to the enhancement.

> ### 3.    Drug Quantity Calculation

Petitioner argues that the presentence report was in error because the drug quantity calculation "unlawfully converted a List II (single) chemical (Iodine) to methamphetamine when Congress never gave such authority to do so."[21]  Petitioner also argues that the law was changed in 2001, and that the sentence he received was more severe than intended by Congress.[22]

Petitioner's base offense level was set at 34, pursuant to USSG § 2D1.1(c)(6), because the offense "involved at least 150 grams but less than 500 grams of Methamphetamine (actual)," as reflected in paragraph 22 of the presentence report.  In support of such a finding, the presentence report cites State of Utah Crime Laboratory reports indicating that Petitioner possessed 26.2 grams of actual methamphetamine and 557.6 grams of iodine.  The presentence report calculation is based upon a 3:1 ratio conversion of iodine, to 185.86 grams of methamphetamine, which resulted in a total drug quantity of 212.06 grams of actual methamphetamine.  This is the quantity used to calculate Petitioner's base offense level.

It appears that Petitioner's argument arises from a basic misunderstanding of the operation of the sentencing guidelines in calculating drug quantities.  Petitioner disputes the calculation with regard to Count I – Possession of a Listed Chemical with Intent to Manufacture.  Normally, this conduct would be calculated under USSG § 2D1.11 – entitled Unlawfully Distributing, Importing, Exporting or Possessing a Listed Chemical; Attempt or Conspiracy –

---

[21] Amended Petition, Docket No. 15 in Case No. 2:04-CV-95 TS, at 6.
[22] *Id.*

8

which would, as alluded to by Petitioner, provide for a base offense level of 28, given the quantities at issue here.  However, Petitioner ignores the cross-reference found at USSG § 2D1.11(c)(1), which provides that, "[i]f the offense involved unlawfully manufacturing a controlled substance, or attempting to manufacture a controlled substance unlawfully, apply § 2D1.1 (Unlawful Manufacturing, Importing, Exporting, Trafficking) if the resulting offense level is greater than that determined" in § 2D1.11.  Because of the underlying manufacturing conduct involved in the underlying offense conduct, as well as the conviction in Count II of Possession of Methamphetamine with Intent to Distribute, clearly the cross-reference found in USSG § 2D1.11(c)(1) applies to this case, and the guidelines were appropriately calculated pursuant to USSG § 2D1.1.  In addition, the presentence report properly relied upon a 3:1 conversion ratio from iodine to methamphetamine (actual).  Further, pursuant to application note 12 to USSG § 2D1.1, the Court may appropriately approximate the quantity of the controlled substance at issue.

Therefore, the Court finds that Petitioner's base offense level based upon drug quantity and equivalency was calculated lawfully and reasonably, and no error occurred.  Additionally, trial counsel did not err or provide ineffective assistance by failing to object to the calculation.

Regarding Petitioner's arguments that the law changed in a way that should have benefitted him during the pendency of the underlying criminal case, the Court notes that Petitioner committed the underlying criminal conduct in approximately November of 1998 and June of 1999, and was indicted on August 11, 1999.  The Superseding Indictment was filed December 2, 1999.  Defendant was sentenced on February 3, 2003.  The 2001 sentencing guidelines manual was used in preparation of the presentence report.[23]  Section 1B1.11 of the

---

[23] *See* paragraph 20 of the presentence report in Case No. 2:99-CR-441 TS.

sentencing guidelines requires that "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced" unless "the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *ex post facto* clause of the United States Constitution," in which case, "the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed."[24]  The Court notes that there was no change in the relevant guidelines in this case from the 1998 to the 2001 editions, so use of the 2001 edition here would be no different from the application of the 1998 edition.  The Court finds that, contrary to Petitioner's assertion, there was no change in law in 1999 that would alter his drug quantity calculation.

Petitioner also cites the Supreme Court case of *Glover v. United States*[25] for the proposition that even a less-than-substantial sentencing error resulting in a sentence greater than appropriate is prejudicial.  The lower courts in that case imposed an additional requirement to the traditional *Strickland* requirement of prejudice, by requiring that the prejudice be substantial.  However, *Glover* is inapposite here because the Court does not require, nor would it require that Petitioner show "substantial" prejudice.[26]  The Court finds that the sentence imposed upon Petitioner was not prejudicial, and the *Glover* question is moot.

    4.  "Safety Valve" Application

Petitioner argues that his trial counsel provided ineffective assistance because "counsel failed to make the appropriate objections to defendant not receiving the 'Safety Valve' departure

---

[24] USSG § 1B1.11(a), (b)(1).
[25] 531 U.S. 198 (2001).
[26] *See U.S. v. Foutenot*, 33 Fed.Appx. 393, 394 (10th Cir. 2002) (unpublished opinion).

where the defendant was clearly expecting such departure, and where 'PSI' leads defendant to believe he will receive the downward departure."[27]

This matter is straightforward – Defendant did, in fact, receive the benefit of "safety valve" treatment, as is clearly reflected in the presentence report. The plea agreement[28] reached by the parties anticipated that Defendant might qualify for the "safety valve," by which the Court would be authorized to sentence Petitioner notwithstanding the otherwise-applicable minimum mandatory sentence.[29] Because this is a drug case, the safety valve also operates to reduce the offense level, in addition to releasing the minimum-mandatory requirement.

Here, Petitioner was subject to a five-year minimum-mandatory sentence in this case for his conduct in Count Two – violating 21 U.S.C. § 841(a)(2), Possession of Methamphetamine With Intent to Distribute. Paragraph 23 of the presentence report reflects that Petitioner did meet the criteria set forth in USSG § 5C1.2,[30] and consequently reduced the sentencing guidelines calculation by two levels, pursuant to USSG § 2D1.1(b)(6). However, Petitioner's sentencing guideline range in the underlying criminal case was *higher*, even at the low end, than the otherwise-applicable five-year minimum-mandatory sentence. Therefore, although the Court was

---

[27] Petitioner's original § 2255 Motion, Docket No. 1 in Case No. 2:04-CV-95 TS, at 5.
[28] Statement by Defendant in Advance of Plea of Guilty, Docket No. 94 in Case No. 2:99-CR-441 TS, at 5.
[29] USSG § 5C1.2.
[30] In order to qualify for "safety valve" treatment pursuant to USSG § 5C1.2, a defendant must not have more than one criminal history point; not use violence or credible threats of violence in connection with the offense; the offense did not result in death or serious bodily injury to any person; not be an organizer, leader, manager, or supervisor of others in the offense; and "truthfully provide[] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan" USSG § 5C1.2(a).

released by the "safety valve" from the requirement to apply at least the five-year sentence, the issue was moot, because the guidelines sentence was much higher than the minimum mandatory.

Trial counsel's failure to object regarding the "safety valve" is misplaced, because there was nothing to object to.  The Court did apply the "safety valve," to the extent is was applicable and, therefore, Petitioner suffered no prejudice, and trial counsel was effective.

In sum, the Court finds that Petitioner's counsel both functioned effectively.  Petitioner's resulting sentence would have been, and was, the same regardless of counsel's actions or inactions.  In sum, Petitioner has failed to demonstrate that either counsel functioned deficiently or that he was prejudiced by the actions or inactions of counsel.

CONCLUSION

Based upon the above, it is hereby

ORDERED that Petitioner's Motion to Strike [Docket No. 18] is GRANTED; it is further

ORDERED that Petition's Motion to Expedite Judgment [Docket No. 16] is GRANTED; it is further

ORDERED that Petitioner's § 2255 Motion is DENIED.

The Clerk of Court is directed to close this case forthwith.

SO ORDERED.

DATED this 28th day of December,  2005.

BY THE COURT:

_____
TED STEWART
United States District Judge